**REVERSE and REMAND; and Opinion Filed July 9, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

### No. 05-12-00026-CV

**TIERONE CONVERGED NETWORKS, INC., Appellant**

**V.**

**MARK PARMAN, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-07631**

## MEMORANDUM OPINION

Before Justices Moseley, Bridges, and Lang-Miers
Opinion by Justice Moseley

TierOne Converged Networks, Inc. (TierOne) appeals an adverse judgment in favor of Mark Parman, which was entered following a jury verdict. In three issues, TierOne argues (1) the trial court erred by excluding evidence discovered after the trial began; (2) discovery of the evidence constitutes good cause for setting aside the judgment and granting a new trial; and (3) the trial court erred by refusing to grant a recess or mistrial on account of the newly discovered evidence. The background and facts of the case are well-known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We sustain TierOne's first issue, do not reach its second and third issues, reverse the trial court's judgment, and remand the case for further proceedings.

The trial began on August 2, 2011. Parman's evidence included testimony from two witnesses: TierOne's Chief Financial Officer—who was an adverse witness—and Parman. Parman testified that he was a co-founder and Director of Marketing for TierOne. When TierOne began business, Parman was issued 4 million shares of common stock and 500,000 shares of preferred stock in TierOne. Parman was given two stock certificates, and he kept the certificates in an unlocked filing cabinet in his office. Parman was out of the office for three to four weeks due to a medical emergency and, when he returned, he discovered "that the certificates had been voided;" someone wrote "void" on the stock certificates. He looked at the certificates "in disbelieve [sic] for a while" and then told his co-founder that they needed to talk. After their conversation, Parman returned the certificates to the unlocked filing cabinet. Parman testified an unidentified person later took the stock certificates from the filing cabinet. He did not have any copies of the stock certificates. Parman sued TierOne for conversion.

TierOne presented evidence that Parman never owned stock in TierOne and also that Parman could have received stock in the future, but such a receipt was contingent on events that never occurred.

On the evening of Wednesday, August 3, 2011, after the second day of trial, Jeffrey Lowenstein, TierOne's counsel, received an email from Scott Hillstrom, a lawyer who had not been involved in this case. (Hillstrom had clients who were adverse to TierOne and Parman in a different lawsuit.) The email contained an audio recording of a telephone conversation between Hillstrom and Parman. The following day, Lowenstein provided a copy of the recording to Parman's lawyer. TierOne sought to use the audio recording at trial, but Parman objected on the grounds that it was not timely disclosed. TierOne made an offer of proof.

Hillstrom was the only witness to testify at the offer of proof. He testified he first talked to Lowenstein on Monday, August 1, 2011. On August 3, 2011, Hillstrom was looking for a document in his files and he found the recording, which he sent to Lowenstein at approximately 8:15 p.m. Hillstrom testified the audio file "does include statements by Parman to the effect that he does not own any stock in TierOne, and I had heard that that issue was a central issue in this case. So I first discovered this fact on Wednesday night, and that's when I supplied this recording. Even I didn't know that information was in this recording until that night." He also testified: "So the same night I discovered [the audio file], I e-mailed it to [Lowenstein]. It's the first I knew it was there, and it's the first that TierOne's counsel knew it existed." Likewise, no one from TierOne knew the recording existed.

The recorded telephone conversation between Hillstrom and Parman, which occurred on May 16, 2008, includes the following exchanges:[1]

> Hillstrom: Are you sure you're not a shareholder [of] TierOne?
> Parman: [No], man, I've got no stock, no nothing, buddy.
> Hillstrom: Who owns most of the stock?
> Parman: [Kevin. It's in the memorandum. Six and a] half million shares. Ron and [Kim], I think, each got 2.2 million over time. It's all in the memorandum.
> Hillstrom: Yeah, right.
> Parman: You know. I mean, you know- -
> Hillstrom: Why didn't you get any? I had heard that you were instrumental in this whole process.
> Parman: Look, man, some things are worth having; [and] some things aren't worth having. Okay? Look, I've got my own beliefs.
> . . .
>
> Parman: [I'm no longer, um, uh, an employee] of TierOne. I don't own any stock. I'm not a director [nor was I ever a director] or an officer of the company. . . .
> . . .

---

[1] At the offer of proof, the court reporter transcribed the portions of the recorded conversation that were played to the trial court. We also listened to the audio file and determined the court reporter's transcription is reasonably accurate. Therefore, we quote the court reporter's transcription here, unless otherwise noted.

Parman: I have taken a long, hard look at it. I could be part of TierOne right now and I could have stock. [Okay? I'm telling you that right - -]

Hillstrom: Well, yeah, I'm sure you could. [I thought you did.]

Parman: Yeah. But the fact of the matter is that after looking at it long and hard, okay, and watching the way things went down there in the beginning, in the interim, in the immediate area, and now, you know, present day, it's just not something I want to be part of. Nothing good comes of that stuff. . . .

These excerpts were played at the offer of proof, and TierOne supplied the trial court with the full recording.

The court denied TierOne's motion to admit the audio file. TierOne also requested that the Court recess or grant a mistrial so that discovery could be conducted on the newly discovered evidence; the trial court denied this request as well. The trial judge stated: "I'm unable to grant a recess without granting a mistrial, based on the Court's schedule, and I'm not going to do that."[2]

The jury found TierOne converted 4 million shares of common stock and 500,000 shares of preferred stock that belonged to Parman.[3] It further found $600,000 would reasonably compensate Parman for his damages resulting from the conversion. The trial court denied TierOne's motion for judgment notwithstanding the verdict and rendered judgment for Parman. The trial court also denied TierOne's motion for new trial. This appeal followed.

A party who learns that its discovery response is no longer complete and correct must amend or supplement the response. *See* TEX. R. CIV. P. 193.5(a). "An amended or supplemental response must be made reasonably promptly after the party discovers the necessity for such a response. . . . it is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly." TEX. R. CIV. P. 193.5(b).

---

[2] The trial judge also stated: "And from the Court's scheduling, continuing this trial would result in a mistrial. We've already mistried this case once before."

[3] The jury was instructed that conversion "is the unauthorized and wrongful exercise of dominion or control over the personal property owned and/or legally possessed by another in denial of or inconsistent with the rights of the owner of the property."

Rule 193.6 generally requires evidence that is not timely disclosed to be excluded, unless an exception applies:

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). The burden to establish good cause is on the party seeking to introduce the evidence, and a finding of good cause must be supported by the record. TEX. R. CIV. P. 193.6(b).

The purpose of rule 193.6 is to "require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush." *Alvarado v. Farah Mfg. Co., Inc.*, 830 S.W.2d 911, 913-14 (Tex. 1992) (applying former rule 215.5); *Lopez v. La Madeleine of Texas, Inc.*, 200 S.W.3d 854, 860 (Tex. App.—Dallas 2006, no pet.). Although the exclusion of the evidence is a harsh consequence, the good cause exception "allows a trial judge to excuse a party's failure to comply with discovery obligations in difficult or impossible circumstances." *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 718 (Tex. App.—Dallas 2011, pet. denied).

We review the trial court's exclusion of evidence based on a party's failure to disclose for an abuse of discretion. *See id.* (citing *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009) (per curium)). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding principles or rules. *Id.* To obtain reversal of the trial court's exclusion of evidence, TierOne must show the trial court's ruling probably (although not necessarily) caused the rendition of an improper judgment. *See Lopez*, 200 S.W.3d at 864; TEX. R. APP. P. 44.1(a)(1). "It is not necessary for the complaining

–5–

party to prove that "but for" the exclusion of evidence, a different judgment would necessarily have resulted." *Lopez*, 200 S.W.3d at 864. "Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). Whether the erroneous exclusion of evidence probably caused the trial court to render an improper judgment is "a judgment call entrusted to the sound discretion and good sense of the reviewing court from an evaluation of the whole case." *Lopez*, 200 S.W.3d at 864 (quoting *First Emps. Ins. Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex. 1983)).

TierOne argues it had good cause for disclosing the audio file during trial, and the trial court erred by not admitting the audio file. Parma argues the trial court properly excluded the evidence because the recording should have been disclosed as a supplement to TierOne's response to Parma's requests for disclosure, and TierOne did not supplement its discovery response reasonably promptly after TierOne discovered the recording.

Because the audio file was produced on the third day of trial, TierOne's supplemental discovery response raised the presumption that the audio file was not produced reasonably promptly. *See* TEX. R. CIV. P. 193.5(b). The first question we consider, then, is whether TierOne showed that it had good cause for its failure to timely supplement its discovery response. *See* TEX. R. CIV. P. 193.6(a)(1). We conclude that it did.

The evidence presented to the trial court at the offer of proof shows TierOne did not know that the audio file existed or that Hillstrom might have had discoverable information until Hillstrom emailed the recording to Lowenstein the night of August 3. Even Hillstrom, the person in possession of the file, did not remember that he had the recording until that evening. It would have been difficult or impossible for TierOne to request information from someone it did not know had relevant information about the case, or to supplement its discovery response with a

–6–

recording TierOne did not know existed and Hillstrom did not recall possessing. *See PopCap Games, Inc.*, 350 S.W.3d at 718. The discovery rules did not require TierOne to do the impossible. *See Frazin v. Hanley*, 130 S.W.3d 373, 378 (Tex. App.—Dallas 2004, no pet.). Until Hillstrom sent the audio file to Lowenstein, TierOne had nothing to disclose. Thus, TierOne had good cause for failing to produce the audio file before becoming aware that Hillstrom had relevant information and becoming aware of the existence of the audio file on August 3, 2011.

Parman also argues TierOne's disclosure of the file was not timely because TierOne did not produce it before completing its cross-examination of Parman the morning of August 4, 2011. Although Lowenstein did not provide Parman's counsel with a copy of the recording until after Lowenstein cross-examined Parman the following morning, Lowenstein did cross-examine Parman about Parman's conversation with Hillstrom. On appeal, Parman argues that "reasonably promptly" "must mean *prior to use of the evidence at trial to cross-examine a witness on that very subject.*" Parman does not cite any legal authority to support this argument and we have not found any.

The fact that Lowenstein cross-examined Parman before producing the audio file does not alone mean the disclosure was not reasonably prompt. Determining whether a discovery response was supplemented reasonably promptly is a question based on, among other things, the length of time that has passed between the discovery of the information to be produced and the production; we do not determine promptness solely based on which events occurred during the intervening time period. *See generally Hooper v. Chittaluru*, 222 S.W.3d 103, 109-110 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Frazin*, 130 S.W.3d at 378 (supplementing discovery within eight days of determining discovery response no longer complete was reasonably prompt); *Tri-Flow International v. Jackson*, No. 13-01-472-CV, 2002 WL 31412532

(Tex. App.—Corpus Christi, Oct. 24, 2002, no pet.) (not designated for publication) (supplementing within two weeks of receiving new evidence was reasonably prompt).

Based on the record, we conclude TierOne supplemented its discovery responses reasonably promptly. TierOne received the audio file at approximately 8:15 p.m. after the second day of trial. TierOne produced the file to Parman the following day. The time between when TierOne discovered the evidence and produced it to Parman was reasonable.

Parman also argues the trial court properly excluded the audio file because Hillstrom, by talking with Parman and recording their conversation, violated Minnesota's and Texas's rules of professional responsibility. (Hillstrom is a Minnesota attorney; at the time the recording was made, he represented clients who were adverse to Parman in a different lawsuit.) We conclude that, even if Hillstrom violated an attorney disciplinary rule, his actions would not render the audio recording inadmissible. "[T]he Court of Criminal Appeals has held that violation of attorney disciplinary rules in obtaining evidence for a criminal proceeding does not bar introduction of that evidence at trial." *Harris Cnty. Appraisal Dist. v. Houston Laureate Assocs., Ltd.*, 329 S.W.3d 52, 55 (Tex. App.—Houston [14th] Dist. 2010, pet. denied) (citing *Gentry v. State*, 770 S.W.2d 780, 790-91 (Tex. Crim. App. 1988); *cf.* TEX. DISCIPLINARY R. PROF'L CONDUCT Preamble ¶¶ 14-15, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (West 2005) ("[T]hese rules are not designed to be standards for procedural decisions. Furthermore, the purpose of these rules can be abused when they are invoked by opposing parties as procedural weapons.")). Moreover, the Texas Rules of Evidence do not compel the exclusion of the audio recording even if it was obtained in violation of attorney disciplinary rules. *See* TEX. R. EVID. 101(b) (rules of evidence govern civil and criminal proceedings in all courts of Texas, except small claims).

Therefore, the trial court abused its discretion by refusing to admit the recording.

We next consider whether the trial court's error "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1).

The jury was asked to decide whether TierOne converted stock owned by Parman, which necessarily required the jury to determine that Parman, at some time, owned the stock. Parman's statements to Hillstrom are relevant to the issue of whether Parman owned stock in TierOne. *See Lopez*, 200 S.W.3d at 864. It is difficult to imagine how a recorded conversation in which Parman makes statements such as "No, man, I've got no stock, no nothing, buddy;" "I don't own any stock;" and "some things aren't worth having" would not influence the jury's consideration of the conversion issue in a manner adverse to the jury's verdict in this case.

Although we cannot definitively state the contents of the audio recording are irreconcilable with Parman's allegations in this case and testimony at trial, a jury likely would consider the apparent variance in his statements when deciding whether Parman was a credible witness. *See id*. During cross-examination in the jury's presence, Parman testified:

> Q. And do you remember telling Mr. Hillstrom on two occasions during that phone call that you did not have stock in TierOne?
> A. No, I don't.
> Q. Do you remember telling Mr. Hillstrom during that conversation that the only people that had common stock in TierOne was Kevin Weaver - - had 6-and-a-half million shares[?] Do you remember saying that?
> A. No, I don't.
> Q. And do you remember saying that the other people that had shares were Ron Celmer and Kim Marshall, who were each going to get 2.2 million shares over time. Do you remember saying that?
> A. No, I don't.
> Q. Do you deny saying that?
> A. I - - there would be - - that would be untruthful for me to say it, so I wouldn't have said it.

Based on the jury's verdict, we can conclude the jurors determined Parman was a credible witness and they credited his testimony that he was awarded stock in TierOne and that TierOne subsequently and improperly voided that stock. The audio recording likely would have impacted the weight the jury accorded Parman's testimony. *See id.*

We conclude the trial court's error of excluding the audio recording probably (although not necessarily) caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Lopez*, 200 S.W.3d at 864. We sustain TierOne's first issue.

Our resolution of TierOne's first issue obviates the need for us to consider TierOne's second or third issues. *See* TEX. R. APP. P. 47.1. We reverse the trial court's judgment and remand the case for further proceedings.

/Jim Moseley/
JIM MOSELEY
JUSTICE

120026F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TIERONE CONVERGED NETWORKS, INC., Appellant

No. 05-12-00026-CV   V.

MARK PARMAN, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. 08-07631.
Opinion delivered by Justice Moseley.
Justices Bridges and Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant TIERONE CONVERGED NETWORKS, INC. recover its costs of this appeal from appellee MARK PARMAN.

Judgment entered this 9th day of July, 2013.


/Jim Moseley/
JIM MOSELEY
JUSTICE